**Leonard Elgin BOYLE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17855.**

Court of Criminal Appeals of Oklahoma.

March 26, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden III, Legal Intern., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Leonard Elgin Boyle, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County, Case No. CRF–71–1408, with the offense of Larceny of a Motor Vehicle, After Former Conviction of a Felony. He was found guilty of the lesser offense of Larceny of a Motor Vehicle and his punishment was fixed at fifteen (15) years imprisonment. From said judgment and

sentence, a timely appeal has been perfected to this Court.

At the trial, Ronald Charlton testified that on June 16, 1971 he lived in the Willow Creek Apartments in Del City and owned a 1970 SL–350 Honda motorcycle. He parked the motorcycle and locked the front wheel at about 8:00 p.m. that evening. The following day he received a call from the police department and, upon checking, found that his motorcycle was missing. He testified that he did not know the defendant and did not give anyone permission to take the motorcycle. Approximately two days later, at police direction, he recovered the motorcycle at the residence of Don Jackson. .

Donald Jackson testified that he was a staff sergeant in the Air Force and, in June 1971, was stationed at Tinker Air Force Base and living in Midwest City. About June 11, 1971, he and Sergeant Ronald Boyle had a conversation in which Ronald stated that he had a friend who could get any type of motorcycle at a reasonable price. Jackson told Ronald that he was interested in buying a Suzuki or Yamaha. On June 14, Ronald stated that he had located a 350 Honda for Five Hundred Dollars ($500.00) and would get in touch with him later. Jackson called the FBI and was referred to the Midwest City Police Department. On Wednesday, Ronald called about 5:00 p.m. and said he could get the motorcycle but a friend would have to deliver it and Jackson was to pay the friend the $500.00. Approximately one hour later, a person identifying himself as "Lenny" called stating that he was a friend of Ronnie's and that he could deliver the motorcycle at 8:00. Jackson called the Midwest City Police Department who set up a surveillance of his residence. About 8:00, Jackson received a call from "Lenny" saying that the delivery would be around 10:00. "Lenny" called back again stating that the delivery would be around midnight. Early the following morning, "Lenny", whom he identified in court as the defendant, drove into his yard in a green utility truck. The defendant came inside the house and announced that he had the motorcycle in the truck. He and Jackson unloaded the motorcycle, a blue 1970 SL-350 Honda, and put it into his garage. The defendant told Jackson to give the money to Ronnie at work. Defendant asked him if he would like to go riding around and see some more motorcycles. Jackson agreed and they rode around looking at various motorcycles. Defendant pointed out a location in the Willow Creek area and told him that that was where he had stolen the motorcycle. Upon returning home, he called the Midwest City Police Department. The following day, Ronald Charlton came to his garage and picked up the motorcycle.

Detective Eddie Thomason of the Midwest City Police Department testified that after talking to Sergeant Jackson, he set up a surveillance of his residence about 5:00 p.m. on June 16, 1971. When no one appeared by 4:00 the following morning, the surveillance was discontinued. About 7 or 8:00 a.m. he received a call from Jackson and, upon going to his residence, observed the Honda motorcycle in his garage. He traced the registration to Ronald Charlton and notified Charlton where to pick up the vehicle.

The sole proposition asserts "prejudicial error resulted from the mention of the defendant's previous penitentiary confinement." The record reflects that during the re-direct examination of the Witness Thomason the following transpired:

"[By Mrs. Hirst] Q. What led you to take a photograph of Leonard Boyle along with other photographs for Sergeant Jackson to look at?

"A. I learned that Ronald Boyle had a brother named Leonard who had been in the penitentiary.

"MR. BLACK: Just a minute. Comes now the Defendant and calls for a mistrial. Here's an officer been serving for

nine years and comes here and wants to harpoon my client.

"THE COURT: Ladies and gentlemen, that answer will be stricken from the record, not to be considered by you jurors.

"MR. BLACK: We move that the Court also declares a mistrial.

"THE COURT: Overruled." (Tr. 102–103)

We concur with the defendant's assertion that the witness' response was an evidentiary harpoon. In dealing with a similar proposition in Green v. State, Okl.Cr., 481 P.2d 805, we stated:

" 'It has been held that similar remarks may not constitute sufficient grounds for reversal where evidence of guilt is clear, but will be considered in connection with the contention that the punishment was excessive as tending to prejudice the defendant with the jury.' "

As in *Green, supra*, the evidence in the instant case of defendant's guilt is crystal clear, thus not requiring reversal. The trial court, in pronouncing judgment and sentence, apparently took into consideration the evidentiary harpoon and modified the jury's verdict. The defendant was charged with the offense of Larceny of a Motor Vehicle, After Former Conviction of a Felony. Evidence was presented to the jury to adduce that the defendant had three prior felony convictions. The jury found the defendant guilty of the lesser offense of Larceny of a Motor Vehicle and fixed his punishment at twenty years and one day. The trial court recognizing that the punishment was excessive by one day, modified the judgment and sentence to a term of fifteen years. We are of the opinion that the trial court's modification was ample under the evidence. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.